STATE of Missouri, Respondent,

v.

Harry Robert COX, Appellant.

No. 32784.

Missouri Court of Appeals,
Western District.

Nov. 9, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Jan. 4, 1983.

---

Robert Beaird, John Pat Burnett, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Harry Cox was found guilty by a jury of manslaughter. Following the jury's recommendation, the court sentenced him to ten years imprisonment. On this appeal, Cox contends the court erred in admitting two photographs of the deceased, in failing to give a definition of recklessness, and in failing to give a voluntary intoxication instruction concerning manslaughter. Affirmed.

On December 15, 1980, Cox went to the apartment of his girlfriend, Sandra Barry. That afternoon, the two went to a neighborhood tavern, where they drank beer and played pool until evening. At that time they returned to the apartment, where they were joined by Michael Hayes and Michael Steele. Sandra apparently went to bed for a while, and the three men continued drinking. A short time later Sandra returned to the front room, and joined Cox on a divan. There was some dispute in the testimony as to whether or not Cox and Sandra had been arguing, but in any event Sandra got up from the divan and started down the hallway to the bedroom with the intention of going back to bed. Although Cox admitted that he had a gun in his hand which fired and killed Sandra, there is some dispute as to what exactly happened.

According to Hayes, Cox and Barry had an argument, and Cox struck Barry on the arm and leg. Barry jumped up and started down the hall toward the bedroom. Cox stood up with a gun in his hand, took aim, and fired. Hayes could not see Barry when

the shot was fired, but heard a thud. He went down the hall and found Barry dead.

According to Steele, Cox and Barry were not arguing, but in fact were showing affection toward one another while on the couch. He said Barry got up from the couch, said goodnight, and started walking down the hall. Steele related that Cox then picked up an automatic pistol and made a motion toward the hall, at which time the gun fired.

Cox's version of the incident was that he and Barry were on very good terms and had not had any disagreement. He said when Barry got up from the couch, he reached down between the cushions and found a pistol which belonged to Barry. He picked the pistol up and started to tell her that she had forgotten her gun, when the gun fired.

Barry was dead when the first police officer arrived. The medical examiner concluded that the cause of her death was a gunshot wound in the head. The bullet entered the back of the head, struck the forehead, and ricocheted into the left hemisphere of the brain, where it lodged.

The State introduced pictures showing Barry's body on the floor in the apartment, and also two pictures of her head that were taken at the morgue. Cox complains that the admission of the two pictures taken at the morgue was prejudicial to him. One of these is of the face, but this picture was never shown to the jury and therefore, the jury could not have been inflamed by it as Cox contends. The other picture shows only the back of Barry's head, with a hand parting the hair so that a small hole is visible. No other part of the body is shown, and there is virtually no blood visible.

■ The trial court is afforded broad discretion in passing on the admissibility of photographs, and its ruling will be held to be erroneous only upon a showing of an abuse of that discretion. *State v. Weekley,* 621 S.W.2d 256, 260[7] (Mo.1981). No such abuse of discretion has been shown in this case. Cox contends the pictures were gruesome, and therefore unduly inflamed the jury. As noted above, the picture which was shown to the jury simply shows a small hole in the back of the head, with virtually no blood. The trial judge did not abuse his discretion in concluding that this picture was not gruesome or inflamatory, and in allowing it to be admitted into evidence and shown to the jury. The picture of the face, which did show a considerable amount of blood, was not shown to the jury and therefore could not constitute error.

Cox also contends that the court erred in refusing to give one of his instructions. The court gave MAI–CR 2.28 on excusable homicide. The second paragraph of that instruction informed the jury that it should acquit Cox on the ground of excusable homicide if it believed that Barry's death was the result of accident or misfortune in handling a firearm "without unlawful intent and without reckless disregard for human life and safety." The definition of the word recklessly, as contained in MAI–CR 33.01, was offered by Cox and refused by the court. MAI–CR 33.00 at note 8 states that unless the Notes on Use expressly require or permit the definition of a term, word, or phrase, it must not be defined even if requested by counsel or jury. The note continues that the Notes on Use under MAI–CR forms give complete and exclusive direction as to terms, words, or phrases which either must or may be defined. MAI–CR 2.28 does not allow or require that any words contained therein be defined.

■ The policy of MAI–CR 33.00, note 8, is reiterated in the case law. In *State v. Tate,* 637 S.W.2d 67, 74[23] (Mo.App.1982), the court held that it would be erroneous to give a definition of a word used in a second degree murder instruction, when the MAI–CR instruction on that crime made no reference to defining the word. *State v. Abram,* 537 S.W.2d 408, 411[3] (Mo. banc 1976), explains that to allow definitions to be given when MAI–CR does not call for such definitions would be to create a myriad of instructions on definitions of terms, and that this in turn would defeat the purpose of pattern instructions. Here, MAI–CR 2.28 did not require or permit the definition of any terms used therein. Thus, the court

was correct in refusing the definition instruction of the word recklessly. *State v. Lehman,* 634 S.W.2d 542, 545–546[12] (Mo. App.1982).

Cox finally contends that the court erred when it refused to give the pattern instruction on voluntary intoxication with a reference therein to the verdict director on manslaughter. Cox was charged with second degree murder and the appropriate verdict director for that crime was given. MAI–CR 3.30.1 instructed the jury that the fact that Cox was intoxicated could be considered by the jury in determining whether Cox acted intentionally as required by the verdict director which submitted second degree murder. Cox requested the same instruction with a reference therein to the verdict director which submitted manslaughter. The court refused that instruction.

In *State v. Mannon,* 637 S.W.2d 674 (Mo. banc 1982), the court held that second degree murder does require the specific intent to kill, or to do great bodily harm. Thus, intoxication is a defense if it negates the existence of specific intent. However, in the course of the opinion, the court noted that recklessness is not sufficient to establish the requisite culpability for second degree murder, but that recklessness is a part of manslaughter. 637 S.W.2d at 679[2–4].

Section 565.005 RSMo 1978 provides that "[e]very killing of a human being by the act, procurement, or culpable negligence of another, not declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." It is apparent that this section makes no reference to any specific intent in connection with the crime of manslaughter. Section 562.021.2 RSMo 1979 provides that if the definition of an offense does not expressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly. Thus, the culpable mental state in manslaughter is satisfied by reckless conduct. MAI–CR 15.18, which is the pattern verdict director for manslaughter, does not require the jury to find any intent, but only

that the defendant caused the death of the deceased.

It is clear from § 565.005, § 562.-021.2, and *Mannon* that manslaughter may be committed by reckless conduct without any specific intent to cause the death of another. MAI–CR 3.30.1, the instruction on intoxication, provides at note 4 that this instruction does not apply to a crime that can be committed recklessly. Manslaughter is a crime which can be committed recklessly. Thus, the court correctly refused to give the intoxication instruction with reference to the manslaughter submission, in that the jury was not called upon to assess Cox's mental state before reaching a verdict. *State v. Helm,* 624 S.W.2d 513, 517[13] (Mo.App.1981).

The judgment is affirmed.

All concur.