**STATE of Missouri, Respondent,**

v.

**Terrance O. RIDEAU, Appellant.**

**No. WD 33128.**

Missouri Court of Appeals,
Western District.

April 12, 1983.

James L. McMullin, McMullin, Wilson & Schwarz, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Defendant Terrance O. Rideau was charged with second degree murder, § 565.-004,[1] in the shooting death of Billy Ray Smith, found guilty of manslaughter, § 565.005, by a jury and sentenced to six years imprisonment. On appeal, defendant asserts that the trial court erred in not giving a manslaughter by culpable negligence instruction, that the evidence was insufficient to support a conviction for voluntary manslaughter, that the prosecutor improperly argued in closing that defendant intended to kill the victim, and that the court erred in failing to instruct on transferred intent. We affirm.

■ The facts of this case are simple but disputed. We begin, then, by noting the rule that in a criminal case, the jury's findings are conclusive. *State v. Johnson,* 55 S.W.2d 967 (Mo.1932). We may neither weigh the evidence nor determine the credibility of witnesses. *State v. Williams,* 376 S.W.2d 133 (Mo.1964). The jury's determi-

1. All sectional references are to Revised Statutes of Missouri, 1978.

nation of the facts based on conflicting testimony must be accepted by this court. *State v. Keck,* 389 S.W.2d 816 (Mo.1965).

The facts of this case, consistent with the jury's verdict, are as follows. On the evening of July 4, 1980, Marcia Denmon, her brother Malcom, Anthony Holland, Larry Robinson, Milo Simmons, Michelle Smith and Billy Ray Smith arrived at a dance hall called The Party House at 31st and Gillham in Kansas City. At the 1:00 o'clock closing time, the group left The Party House, heading toward Malcom's car. While Ms. Denmon was standing in front of a car parked on the street, the driver, later identified as the defendant, told her, "Move, bitch." An argument ensued. She went back into the dance hall and told her brother about defendant's comments.

Malcom Denmon then went outside and was standing by his car with Milo Simmons, Larry Robinson and Michelle Smith when he confronted the defendant who had pulled out into the street and stopped beside Mr. Denmon's car. Insults were exchanged. Just as Malcom Denmon took several steps toward defendant's car, Milo Simmons said, "Say something to her now, man." The defendant responded by pulling out a .38 revolver and firing three times over his shoulder in the direction of the left rear of his car where Ms. Denmon, Anthony Hall, and Billy Ray Smith were standing. All three fell to the pavement as the defendant sped away.

Billy Ray Smith had been struck by a bullet under his right eye. He died several hours later.

At trial, defendant's version of the facts differed only in that he claimed he stopped his car in mid-street in response to hearing his nickname, "Pee Wee." He was approached by Malcom Denmon who, he said, was carrying a gun and he heard someone

say "Do it now, man." Fearful that he was about to be shot, Mr. Rideau pulled out a revolver and shot into the air. All members of the Denmon party denied that any revolver other than that fired by Mr. Rideau was present.

The trial court instructed the jury on second degree murder and manslaughter. Mr. Rideau was found guilty of the latter.

All of defendant's points on appeal turn on the question of whether conventional manslaughter requires an intentional act. He claims that (1) MAI–CR 2d 15.18 [2] was inappropriate because according to defendant, manslaughter requires "an intentional killing while in a state of anger, fear or agitation, suddenly provoked by the unexpected acts of the victim" and therefore, because no evidence was offered to show these elements, MAI–CR 2d 15.20, Manslaughter: Culpable Negligence was the proper instruction; (2) the evidence was insufficient to prove defendant intentionally killed and, therefore, the verdict was based on mere speculation; (3) the prosecutor improperly argued that defendant intended to kill the victim; and (4) the court failed to give the transferred intent instruction.

■ Because all of defendant's points turn on the pivotal question of whether manslaughter requires an intentional killing, all his arguments must fail. Our manslaughter statute imposes no such requirement. At the time of trial, § 565.005 defined manslaughter as follows: "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." [3] No mention of intent is made. Section 562.021.2 provides that "if the definition of an offense does not ex-

---

2. The instruction in this case, based on MAI–CR 2d 15.18, was as follows:

   If you find and believe from the evidence beyond a reasonable doubt that on July 5, 1980, between the hours of 1:00 and 1:30 A.M., in the County of Jackson, State of Missouri, the defendant caused the death of Billy Ray Smith, by shooting him, and that

the death was not a justifiable homicide, as submitted in Instruction No. 7, or an excusable homicide as submitted in Instruction No. 8, then you will find the defendant guilty of manslaughter.

3. Note that § 565.005 was revised in 1982 specifically to exclude vehicular manslaughter.

pressly prescribe a culpable mental state, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly or recklessly, but criminal negligence is not sufficient." As we stated in *State v. Cox,* 645 S.W.2d 33 at 36 (Mo.App.1982), "Thus, the culpable mental state in manslaughter is satisfied by reckless conduct. MAI–CR 15.18, which is the pattern verdict director for manslaughter, does not require the jury to find any intent, but only that the defendant caused the death of the deceased."

That recent opinion is consistent with language in *State v. Chamineak,* 343 S.W.2d 153, 161 (Mo.1961), in which the court acknowledged that although an intent to kill may exist, "it is not an indispensible element of manslaughter." Further, although the common law recognized "voluntary manslaughter," defined as the intentional killing of another and "involuntary manslaughter," defined as an unintentional killing committed while doing some unlawful act not amounting to a felony, two distinct types of manslaughter are not recognized in our manslaughter statute. *State v. Foster,* 338 S.W.2d 892, 896 (Mo.1960). In fact, § 565.005 "creates only one crime of manslaughter which is a killing of a human being by 'the act, procurement or culpable negligence of another.'" *State v. Ericson,* 638 S.W.2d 806, 807 (Mo.App.1982).

Contrary to defendant's position, then, as stated recently in *State v. Guyton,* 635 S.W.2d 353, 358 (Mo.App.1982),

> Manslaughter is a residuary homicide offense; an unintentional killing of another which did not occur in the commission of a dangerous felony. Thus, if an actor assaults another with the intent to kill and death results he is liable for second degree murder; *but if he assaults another without the intent to kill and death results, then he is liable for manslaughter.* (Emphasis added.)

Having so defined manslaughter, defendant's points are easily disposed of, as follows.

His first point, that MAI–CR 2d 15.18 was erroneous because it did not require the jury to find an intentional killing has no merit. Not only is an intentional killing not a necessary element of manslaughter, MAI–CR 2d 15.18 is the only instruction which must be automatically submitted when second degree murder is submitted.[4] MAI–CR 2d 15.20, the Manslaughter: Culpable Negligence instruction which defendant now claims was more appropriate, was never requested. Moreover, under MAI–CR 2d 15.00, Caveat *a* specifically directs that "whenever manslaughter is 'automatically' submitted as a lesser included offense, MAI–CR 15.18 is used and not MAI–CR 15.20." *See also State v. Ericson, supra,* at 808, stating that "MAI–CR 15.20 is to be used only when the manslaughter as charged in the information or indictment is by culpable negligence" and is not to be submitted as a lesser included offense; and *State v. Mee,* 643 S.W.2d 601, 604 (Mo.App. 1982), holding that where defendant was charged with second degree murder, "the trial court would have erred had it given MAI–CR 15.20 instead of MAI–CR 15.18."

Similarly, defendant's second point is that the evidence was not sufficient to show an intentional killing and that, therefore, the verdict was based upon mere speculation as to intent. That point too must fail, again because conviction for manslaughter does not require proof of an intentional killing.

Defendant's third point is that, because no evidence supported such an intention, the trial court erred in allowing the prosecutor to argue in closing that the defendant intended to kill Billy Ray Smith. Although we are not convinced that the evidence which showed an intentional shooting at three people could not support an intent to kill, the decisive point here is that, whether or not the jury believed the prosecutor as to intent, that belief was irrelevant to the manslaughter conviction. Manslaughter requires no such intent.

**4.** *See* MAI–CR 2d 15.14, Notes on Use 2, MAI–CR 2d 15.18, Notes on Use 2, and MAI–CR 2d 15.00, Supplemental Notes on Use 3f.

Finally, defendant argues that the trial court should have given MAI–CR 2d 15.22, an instruction on transferred intent. We must disagree first because in reality, 15.22 is not a separate instruction but merely a means of modifying other instructions where force directed toward one person results in death to another. As 15.22, Notes on Use 2b specifically states, "The manslaughter . . . instruction will require no alteration." Although the note does not explain why this is so, logically it must be because where intent is not a necessary element, transferred intent is irrelevant. Second, if we interpret defendant's complaint to be that the second degree murder instruction should have been modified according to 15.22, that complaint must fail simply because he cannot complain of an instruction on a degree of murder for which he was not convicted. *State v. Buckles,* 636 S.W.2d 914, 918 (Mo.1982) (en banc).

For the foregoing reasons, we affirm defendant's conviction for manslaughter.

All concur.