**STATE of Missouri, Respondent,**

v.

**David Wayne BALL, Appellant.**

**No. WD 34004.**

Missouri Court of Appeals, Western District.

June 28, 1983.

**STATE of Missouri, Respondent,**

v.

**Walter L. RANDLE, a/k/a Jones, Appellant.**

**No. WD 33822.**

Missouri Court of Appeals, Western District.

June 28, 1983.

Before LOWENSTEIN, P.J., and WASSERSTROM and MANFORD, JJ.

James D. Worthington, Adull, Sherman & Worthington, Lexington, for appellant.

John Ashcroft, Atty. Gen., George Cox, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., SOMERVILLE, C.J., and KENNEDY, J.

TURNAGE, Presiding Judge.

David Ball was found guilty by a jury of culpable negligent manslaughter under § 565.005 RSMo 1978. In accordance with the jury's verdict, the court sentenced Ball to one year in the county jail and a fine of $1,000. On this appeal, Ball contends that the court erred in failing to sustain the defendant's motion to dismiss due to insufficiency of the evidence, in failing to dismiss the information for its insufficient recital of specific factual allegations, in instructing the jury on circumstantial evidence in instruction number 5, in failing to instruct the jury on accidental death, in failing to instruct the jury as to the definition of "reckless," in allowing surplusage in the verdict to stand without correction or striking, in instructing the jury on verdict directing instruction number 7 without including the specific factual allegations against the defendant, and in instructing the jury on aiders and abettors or responsibility for the acts of others in instruction number 6. Affirmed.

In the summer of 1981, David Ball was living with his fiancee Vera Noland and her three children in a trailer home near Odessa, Missouri. On July 15, 1981, Brian Murray, Noland's 16 year old cousin, came to stay with Ball and Noland in their trailer. On that day Ball, Noland, and her children left for the day, leaving Murray alone in the trailer. There was evidence that in the course of the day Murray drank some whiskey.

When Ball, Noland, and her children returned that evening, they noticed nothing unusual about Murray. There was evidence presented that Ball, Noland, and Murray used some drugs later in the evening. At approximately 10:30 p.m., Ball and Murray went into Odessa to buy gas and beer. While buying gas, the two met Jesse Horton, a middle aged hitch-hiker. Horton offered to buy Ball and Murray a couple of six packs of beer if they would agree to give him shelter for the night. Ball accepted Horton's offer, and the three arrived back at the trailer sometime after 11:30 p.m.

Noland and her children went to sleep, while the three men stayed up into the early morning hours and talked, played cards, and drank beer. Murray testified that Ball suggested that the three go outside and fire Ball's shotgun. While Ball stated that they had been shooting at bottles on a logpile and that Murray had hit one of them, Murray claimed that he had not seen any bottles on the logpile. Murray testified that Ball had encouraged him several times in the course of the evening to injure Horton so that they could rob him, and that ultimately he had told him to shoot Horton in the leg or foot. Ball testified that he had never suggested or encouraged Murray to shoot or otherwise injure Horton. At about 3:00 a.m., Murray shot Horton in the chest, killing him instantly. Murray stated that Ball took Horton's billfold off his body, while Ball denied having done so.

After finding that Horton had no pulse, Ball woke Noland and told her what had happened. Because the phone in the trailer was not operational, Murray went to Odessa with the gun to inform the police.

Ball was originally charged with first degree murder under § 565.003 RSMo 1978. A few days before trial, the state amended the information and charged Ball with manslaughter by culpable negligence.

■ Ball argues that the court erred in failing to sustain his motions to dismiss at the close of the state's evidence and at the close of all the evidence, on the grounds that the evidence was insufficient to establish any culpable negligence. On appeal, all evidence and reasonable inferences in support of the verdict must be accepted as true, and everything else must be disre-

garded. *State v. Turner,* 623 S.W.2d 4, 6[1] (Mo. banc 1981).

Murray's testimony was that Ball planned several ways in which Murray could injure Horton so that they could rob him. The first plan was for Murray to strike Horton with his fist. This plan failed when, after Murray struck him, Horton responded by hitting Murray in the throat with a karate chop. The next method Ball suggested was to hit Horton on the head with a hammer. Murray got the hammer and crept up behind Horton while he and Ball were playing cards. However, Murray's nerve failed him and he eventually put the hammer away. The final plan was to shoot Horton in the leg. While they were outside firing the shotgun, Ball took Murray aside and told him to shoot Horton in the leg when Ball said, "shoot the bottle." When Ball spoke those words, Murray testified that he pointed the gun toward Horton, turned his head and closed his eyes, and fired. When he looked to see what had happened, he saw Horton fall to the ground.

"Culpable negligence 'means disregard of the consequences which may ensue from the act, and indifference to the rights of others ...'" *State v. Manning,* 612 S.W.2d 823, 826[2–4] (Mo.App.1981), *quoting State v. Kays,* 492 S.W.2d 752, 760 (Mo.1973).

There was ample evidence from which the jury could have found, as they did, that Ball planned, promoted, and aided in the shooting of Horton. There is no doubt that the actions of Ball amounted to culpable negligence because they were clearly in disregard of the consequences which might ensue from Murray's attempt to shoot Horton in the leg. While Ball did not tell Murray to kill Horton, he aided and promoted Murray in firing the gun at Horton in reckless disregard for Horton's life. This is one aspect of culpability. *Manning,* 612 S.W.2d at 826.

Ball's contention is that Murray's testimony was unworthy of belief. This is a jury question which was resolved against Ball. Thus, the trial court properly denied the motions to dismiss.

Ball's next argument is that the trial court erred in failing to dismiss the information for its insufficient factual allegations. Rule 23.01(b)(2) states that "[t]he indictment or information shall ... [s]tate plainly, concisely, and definitely the essential facts constituting the offense charged." After setting forth the charge that Ball committed manslaughter in violation of § 565.005, the information states:

[T]he defendant, either acting alone or knowingly in concert with others, unlawfully killed a man known as Jesse Horton by defendant's culpable negligence in handling a shotgun on or about July 16, 1981, in the County of Lafayette, State of Missouri, thereby causing the man known as Jesse Horton to die on or about July 16, 1981, in the County of Lafayette, State of Missouri.

The information in this case exactly follows MACH–CR 16.18(b). Rule 23.01(e) states:

All indictments or informations which are substantially consistent with the forms of indictments or informations which have been approved by this court shall be deemed to comply with the requirements of this Rule 23.01(b).

Thus, the information in the case is proper, and the trial court correctly refused Ball's motion to dismiss the information for its insufficient allegations of facts.

Next, Ball contends that because there was no circumstantial evidence in the case of any guilt or responsibility, the court erred in instructing the jury on circumstantial evidence in instruction number 5, which was based on MAI–CR2d 3.42. He concedes, however, that the instruction would have been proper if there was some circumstantial evidence in the case.

Having reviewed the transcript in this case, this court has found that there was circumstantial evidence. An officer who viewed the scene of the occurrence outside Ball's trailer testified that he had found only one intact beer bottle in the yard and no broken bottles. The same officer testified that he had found Horton's

billfold, containing some bills, on Horton's body.

■ If a case partially depends on circumstantial evidence, it is proper to give an instruction on circumstantial evidence, even if that circumstantial evidence corroborates direct evidence in the case. *State v. Hunt,* 461 S.W.2d 879, 880[1] (Mo.1971). The holding in *Hunt* is in harmony with Note 2 to MAI–CR2d 3.42's Notes on Use, which states that an instruction on circumstantial evidence may be given even if there is direct evidence of guilt. Thus, the court did not err in giving instruction number 5.

■ Ball also argues that the trial court erred in failing to instruct the jury on accidental death pursuant to MAI–CR2d 2.28.[1] While Ball argues that there is a factual basis to support the giving of this instruction, he does not state what that evidence is. Murray testified that in his initial conversation with the police following the shooting, he said that his shooting of Horton was accidental. However, he admitted in his testimony that this was not true, and stated that he intentionally shot Horton. No other witness stated that the shooting was accidental. Thus, the trial court was correct in failing to instruct the jury on accidental death, as there was no factual basis to support it.

■ Ball next contends that the trial court erred in not giving a separate instruction defining the term "reckless." Note 8 of the Notes on Use to MAI–CR2d 33.00 states: "[u]nless the Notes on Use expressly require or permit the definition of a term, word or phrase, it *must not be defined* even if requested by counsel or the jury." (emphasis supplied). The Notes on Use to MAI–CR2d 15.20 do not require or permit the term "reckless" to be defined. Thus, the trial court was correct in not defining that term.

Ball's next point is that the trial court erred in not ruling that the term "without parole" be stricken from the jury's verdict as surplusage. Ball did not preserve this point either at trial or in his new trial motion, and it is thus reviewable only as plain error.

■ It is well established in Missouri that although its form may be irregular, a verdict is good if the intent of the jury may be ascertained. *State v. Lewis,* 491 S.W.2d 326, 328[3] (Mo.1973). A verdict which contains enough to support a judgment will not be held to be bad because it is informal or because it contains surplusage. *State v. Jordan,* 285 Mo. 62, 225 S.W. 905, 907[6] (Mo.1920). Because the verdict was otherwise unobjectionable and contained sufficient findings to support the judgment,[2] the trial court did not commit plain error by not striking the term "without parole."

Ball next contends that the trial court erred in instructing the jury by verdict directing instruction number 7, which is patterned after MAI–CR2d 15.20, the form for culpable negligent manslaughter. He argues that this instruction is inadequate in that it did not include other elements of the state's case, such as the use of drugs and alcohol and the relative youth of Murray.

■ Instruction number 7 follows MAI–CR2d 15.20 in submitting the question of whether or not Ball was guilty of manslaughter. Ball would have the instruction contain a recital of facts in violation of Rule 70.02(a). The instruction properly omitted a listing of facts such as use of drugs.

Ball next contends that the trial court erred in giving instruction number 6, which related to responsibility for conduct arising out of aid given to another, and tracked MAI–CR2d 2.10. Because Ball failed to preserve this point by raising it either at trial or in his motion for new trial under

1. Note 2 states the instruction must be given, whether requested or not, if there is evidence to support it.

2. The verdict stated as follows:

We, the jury, find the defendant David Wayne Ball guilty of manslaughter as submitted in Instruction No. 7.
We assess and declare the punishment at a fine of $1,000 and confinement in the county jail for a term of one year without parole.

Rule 28.03, it is reviewable only as plain error as set forth in Rule 29.12(b). Thus, it must be shown to have caused a manifest injustice.

 Ball fails to explain in what way instruction number 6 fails to conform to MAI–CR2d 2.10, in that he makes only general complaints such as the instruction amounted to a roving commission and confused the jury. This court finds that instruction number 6 conforms with MAI–CR2d 2.10, and that the trial court did not err, plain or otherwise, in giving it.

The judgment is affirmed.

All concur.