**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert M. HAFELI,
Defendant-Appellant.**

No. 49237.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 11, 1986.

Motion for Rehearing and/or Transfer Denied March 11, 1986.

Case Transferred to Supreme Court April 15, 1986.

Case Retransferred to Court of Appeals Sept. 24, 1986.

Original Opinion Reinstated Sept. 25, 1986.

James Jay Knappenberger, Private Atty., Clayton, for defendant-appellant.

John Munson Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Defendant, Robert M. Hafeli, appeals his jury conviction in St. Louis County Circuit Court of Manslaughter by Culpable Negligence, Section 559.070 RSMo 1969[1] for which he was sentenced to the Department of Corrections and Human Resources for a term of four years. Defendant contends on appeal that the court erred (1) in denying defendant's motion for Bill of Particulars because the indictment charging him with murder second degree, and in the alternative, with manslaughter by culpable negligence in handling a gun was totally defective in that the charging of defendant in the alternative required the preparation of defenses on two separate and non-exclusive charges; (2) in refusing to submit to the jury defendant's proposed instructions on no duty to retreat in one's own home; (3) in refusing to submit to the jury defendant's instruction regarding the defense of justification as an adjunct to the manslaughter instruction; and (4) in refusing to allow the testimony of specific acts of violence by the victim because it was relevant and material as to the victim's violent disposition and defendant's fear.

We review the evidence in the light most favorable to the state.

At the time of the victim Diane Gilbin's death, she and her two daughters were living with the defendant in his home.[2] The victim and the defendant had been in a relationship for approximately one year.

On the evening of April 16, 1982 the couple went to two different taverns where they drank alcoholic beverages and danced. At approximately one o'clock in the morning on April 17, 1982, they left the tavern and returned to defendant's home.

A minor argument began between the two parties on the way home from the last drinking establishment. This argument escalated once they arrived at the defendant's house. Defendant asked the victim to make love with him when they were in the bedroom, but she vehemently refused. Defendant left the bedroom and threw a beer bottle down the hallway at the wall. Defendant proceeded to pick up the glass from the broken beer bottle and the victim came out of the bedroom. The argument continued, and the victim tried to make some telephone calls but defendant prevented her from doing so by hanging up the telephone. Subsequently the victim threw the telephone at the defendant. While threatening to kill defendant, the victim went into the kitchen, and rummaged around in a drawer containing kitchen knives. She was observed by defendant to have grabbed two knives and a fork. Consequently, defendant went into the bedroom, retrieved a pistol, and returned to the kitchen carrying the gun at his side. After returning to the kitchen the defendant and the victim were standing approximately one to two feet apart. The victim again threatened to kill defendant and raised her arms above her head. Defendant observed a "glimmer of steel" in her hand, ducked down, and tried to cover himself, but collided with the victim's arm causing his gun to discharge. As a result the victim was fatally wounded. The police were summoned. They found at the scene two knives, one near the victim's feet, and one underneath her left hand. On one of the knives the right thumbprint of the vic-

---

1. Section 559.070 RSMo 1969 was transferred to Section 565.005 RSMo 1978. This means that Section 559.070 was never repealed and Section 565.005 was never formally enacted. Therefore, Section 559.070 was still in effect at the time defendant was charged, and was the proper statute under which to indict him. *See State v. Durley*, 603 S.W.2d 72, 73 [1] (Mo.App.1980).

2. The victim and her two daughters lived in the defendant's home rent free.

tim was found. They also found defendant's gun on the kitchen table.

An autopsy revealed that the blood alcohol level of the victim at the time of death was .258.[3] There was conflicting expert testimony as to whether a person may actively function at such a high level of intoxication.

There was testimony at trial from several witnesses as to the victim's reputation for being more aggressive and loud when intoxicated. There was also testimony by defendant concerning previous actions of the victim that could be construed as threats upon his life or well-being.

Defendant at the instruction conference objected to the court's failure to give an instruction submitted by him concerning no duty to retreat in one's own home. Following the instruction conference closing arguments took place, the case was submitted to the jury, and a verdict of guilty on the charge of manslaughter by culpable negligence was returned. This appeal followed.

Defendant initially contends that the trial court erred in denying his motion for a Bill of Particulars because the indictment charging him with murder in the second degree, and in the alternative, with manslaughter by culpable negligence in the handling of a gun was totally defective in that the charging of the defendant in the alternative required the preparation of defenses on two separate and non-exclusive charges.

■■■ A motion for a Bill of Particulars is addressed to the discretion of the trial court and its ruling should not be disturbed unless there is an abuse of discretion. *State v. Cox*, 352 S.W.2d 665, 672 [17] (Mo.1962). *State v. Feeler*, 634 S.W.2d 484, 486 [4] (Mo.App.1981). The court in this indictment charging the defendant with manslaughter by culpable negligence, Section 559.070 RSMo 1969 (now Section 565.024.1(1) RSMo 1984) followed MACH–CR 16.18(b). Rule 23.01(e) states:

All indictments or information which are substantially consistent with the forms of indictment or information which have been approved by this court shall be deemed to comply with the requirements of this Rule 23.01(b).

*See: State v. Ball*, 654 S.W.2d 336, 339 [6] (Mo.App.1983). Defendant has not demonstrated how he was prejudiced by the failure of the trial court to grant him a Bill of Particulars nor have we ascertained any prejudice.[4] Nor do we conclude that the trial court abused its discretion in this respect. Therefore, we rule this Point against defendant.

Defendant next contends that the trial court erred in refusing to submit to the jury his proffered instructions that defendant had no duty to retreat within his own home. One of these instructions, "Instruction A," reads as follows:

The defendant has no obligation to retreat when he is in his own home.

The other, "Instruction B," reads as follows:

The defendant has no duty to retreat when he is in his own home.

Defendant's position is that there is no duty to retreat in one's own home, and such an instruction should be given as part of a series to be submitted with justifiable or accidental homicide.

The state supports the court's refusal to give such an instruction on the premise that the evidence in this case does not support the theory of defense of habitation, therefore an instruction on no duty to retreat would have been incorrect. The state's reliance on the defense of habitation to resolve this issue is appropriate.

The defense of habitation refers to the circumstances where a person is justified in committing a homicide to prevent an entry into his home.

The defense of habitation grants the lawful occupant of a dwelling the privi-

---

3. The limit for a legal blood alcohol level is .1

4. Defendant's reliance on Section 565.004.2. L.1983, p. 925 is misplaced because the effective date of that law was October 1, 1984, and this case was tried in May, 1984.

lege to use deadly force to prevent an attempted unlawful entry into the dwelling, if the occupant had reasonable cause to believe that (1) there is immediate danger the entry will occur, (2) the entry is being attempted for the purpose of killing or inflicting serious bodily harm on the occupant and (3) deadly force is necessary to prevent the unlawful entry. *State v. Ivicsics,* 604 S.W.2d 773, 777 [7] (Mo.App.1980). We agree with the state that the evidence in this case does not support an instruction regarding the defense of habitation. There was no attempted unlawful entry into defendant's home. The victim was in defendant's home legally and with his consent. The lack of evidence precluding the use of the defense of habitation, however, does not negate the necessity to submit to the jury an instruction regarding the lack of a duty to retreat.

When attacked in his own house, one may justify or excuse the killing of his assailant if such act is apparently necessary to save his own life or to protect himself from great bodily harm. In such case, it is the question of the law of self‑defense and not the law of defense of habitation which is involved.  ... Therefore, what protective action the occupant may take after the aggressor has effected his entry depends upon the facts and circumstances then existing, and a homicide then occurring is justifiable only under the usual rules of self‑defense or to prevent therein the commission of a felony, *except that there is no duty to retreat.* (emphasis added)

*State v. Brookshire,* 353 S.W.2d 681, 691, 692 [24] (Mo.1962). *See also, State v. Neria,* 526 S.W.2d 396, 398 [3] (Mo.App.1975);

*State v. McGowan,* 621 S.W.2d 557, 559 [7] (Mo.App.1981); *State v. Gardner,* 606 S.W.2d 236, 239 [1] (Mo.App.1980).[5]

▮ The court specifically stated at trial that there was enough evidence to support a self‑defense instruction. However, the instruction submitted by the court contained no provision explaining that the defendant had no duty to retreat. Under normal circumstances this would be the correct way in which to instruct the jury concerning the doctrine of self‑defense.

Self defense grants a defender the privilege to use deadly force in the effort to defend himself against personal harm threatened by the unlawful act of another, if the defender has reasonable cause to believe that (1) there is immediate danger and threatened harm will occur; (2) the harm threatened is death or serious bodily injury; and (3) deadly force is necessary to overcome the harm as reasonably perceived. *State v. Sanders,* 556 S.W.2d 75, 76 (Mo.App.1977); *State v. Jackson,* 522 S.W.2d 317, 319 (Mo.App. 1975). In addition, to invoke this privilege, the defender must *"have done everything in his power, consistent with his own safety, to avoid the danger, ..., and he must retreat, if retreat is practicable",* before responding to the threatened harm with deadly force. (emphasis added)

*State v. Ivicsics,* supra at 776 [3]. However, in view of the fact that the defendant was attacked in his own home, the exception to the duty to retreat as set forth by the Missouri Supreme Court in *Brookshire* governs and the trial court should have instructed the jury accordingly. The fail-

---

5. *State v. Gardner* is of significance in the present case in that the court stated that the defendant would have had no duty to retreat from her husband had she been attacked by him in her home. However in that case she had been in the garage which is beyond the threshold of their dwelling, therefore she was not in the house proper. This resulted in her having a duty to retreat from her attacker, *State v. Gardner, supra,* at 239–240 [1]. The defendant in the present case was attacked by the victim within the boundaries of his own home. Therefore he falls within the exception to the duty to retreat

and had no obligation to retreat from his attacker. Furthermore, *Gardner* is significant to the present case because it advocated the application of the "no duty to retreat in one's own home doctrine" to a person who was attacked by another member of the same household who did not classify as an intruder. In the case at bar the defendant and the victim were members of the same household and had a similar relationship to that of husband and wife. See Anno. Homicide: Duty to retreat when assailant and assailed share the same living quarters. 26 ALR 3rd 1296.

ure of the trial court to give an instruction to the jury that the defendant had no duty to retreat in his own home in conjunction with the self-defense instruction was error.

■ However, because we believe defendant was not entitled to a self-defense instruction for reasons hereinafter stated, and defendant was not convicted of murder in the second degree nor conventional manslaughter under Count I of the Amended Information in Lieu of Indictment we hold that such error was harmless.

Defendant next contends that the trial court erred in refusing to submit to the jury an instruction on justification as an adjunct to the verdict director on the manslaughter by culpable negligence charge.

The state argues that a self-defense instruction is inappropriate in a manslaughter by culpable negligence prosecution because self-defense involves the claim that life was taken by an intentional affirmative act, made necessary upon reasonable apprehension of a design on the part of the deceased to do the defendant great bodily harm; manslaughter by culpable negligence, however, is an involuntary homicide and therefore only a defense, e.g. accident, which hypothesizes an involuntary act is submissible.

■ "Culpable negligence" in the context of the manslaughter statute means disregard of the consequences which may ensue from the act and indifference to the rights of others. *State v. Devall*, 654 S.W.2d 172, 174 (Mo.App.1983). The culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life. *State v. Manning*, 612 S.W.2d 823, 826 [3] (Mo.App.1981). Furthermore, the manslaughter statute imposes no requirement of intentional killing. *State v. Rideau*, 650 S.W.2d 675, 676 [2] (Mo.App.1983). Manslaughter is a residuary homicide offense; an unintentional killing of another which did not occur in the commission of a felony.

The culpable mental state in manslaughter, not specifically mentioned in the statute, is satisfied by purposeful, knowing, or reckless conduct. *State v. Isom*, 660 S.W.2d 739, 743 [13, 14] (Mo.App.1983).

Self-defense in homicide involves a claim that a life was taken by an *intentional,* affirmative act, made necessary upon reasonable apprehension of a design on the part of the deceased to do the defendant great bodily harm. An accidental homicide involves an unintentional taking of human life. The two concepts are inconsistent. *State v. Hale*, 371 S.W.2d 249, 258 [24, 25] (Mo.1963).[6]

■ As we view the evidence it supports a submission of accident and not self-defense because viewed most favorably for the defendant the gun was discharged when he was struck by the victim's arm as it hit his hand in which he held the gun. Defendant was the sole surviving eyewitness to the shooting and at trial he testified that he did not intend to shoot the deceased. His confession was to the same effect. If the shot was fired in self-defense it was a voluntary act, but if accidental it was involuntary. *State v. Sivils*, 589 S.W.2d 617, 619 [4] (Mo.App.1979). In *State v. Harkins*, 535 S.W.2d 462 (Mo.App. 1976) the court noted that defendant's testimony alone may not provide the basis for submitting the inconsistent defenses of accident and self-defense to the jury. By his testimony, either that there was no intent to fire at the victim or that he deliberately did so under fear for his life or safety, the defendant commits himself to one alternative or the other.

Under the evidence in this case we conclude that the trial court did not err in refusing to submit to the jury a self-defense instruction as to Count II, particularly since it did submit to the jury an instruction on accident which was supported by the evidence. The law does not recognize the anomalous doctrine of accidental self-

---

6. Nevertheless, case law is clear that the defenses of accident and justifiable homicide, although inconsistent, must both be submitted if each is supported by evidence, unless defendant's personal testimony is relied upon to support both. *State v. Sanders*, 541 S.W.2d 530, 533 [2] (Mo. banc 1976); *State v. Rickey*, 658 S.W.2d 951, 954 [5] (Mo.App.1983).

defense, *State v. Whitchurch*, 339 Mo. 116, 126, 96 S.W.2d 30, 35 [8] (Mo.1936). *See: State v. Peal*, 463 S.W.2d 840, 842 (Mo. 1971).

Defendant's final contention is that the trial court erred in refusing to allow testimony of specific threats of violence by the victim against his dog and former girlfriend and in denying his offer into evidence of a butcher knife allegedly used by the victim in an attempted assault on defendant three weeks prior to the incident resulting in her death.

■ Evidence of prior threats, the reputation of turbulent disposition of the victim and described acts of violence upon the defendant are admissible and serve a duplicate role as proof of fact of the aggressor and as proof of the fact of the reasonableness of the defendant's apprehension at the time he resorts to physical force for defense. *State v. Peoples*, 621 S.W.2d 324, 327–328 [2] (Mo.App.1981).

In *State v. Ivicsics, supra,* the defendant contended that the trial court erred in rejecting his evidence that the victim committed specific acts of violence upon members of the defendant's family. This court held that the trial court acted properly in rejecting this evidence and said, 604 S.W.2d at p. 781:

> Evidence of Robert's [victim] reputation for violence would be admissible to support defendant's defense of habitation theory, but such evidence must be proved by testimony concerning general reputation and not, as defendant argues, by specific acts of violence which are not connected with the defendant. * * * The fact that defendant may have been aware of the specific acts of violence directed towards others does not change this rule, * * *, nor would this rule be altered by the fact that the specific acts of violence were directed against immediate members of defendant's family and were known by the defendant.

We are of the opinion the same rule is applicable in this case and find no merit in defendant's contention.

■ With respect to the butcher knife, the trial court excluded it because it sustained the state's objection to the introduction of the knife into evidence on the grounds that the defendant violated the rules of discovery by failing to disclose the existence of the knife to the state. Rule 25.16 VAMR provides that the trial court may exclude evidence for the failure to comply with discovery if it considers such a sanction just under the circumstances. Imposition of sanctions where a party has failed to afford discovery rests within the sound discretion of the trial court, and the primary concern is fundamental fairness to the parties. The trial court has discretion. *State v. Patterson*, 598 S.W.2d 483, 486 [1] (Mo.App.1980).

The court in *State v. Davis*, 572 S.W.2d 243, 248–249 [6] (Mo.App.1978) said:

> Whether or not a trial court has abused its discretion in not imposing a sanction authorized by Rule 25.45 [now Rule 25.-16] is tested in terms of the nature of the charge, the evidence presented by the state, the role which the nonproduced information would likely have played, and whether the nonproduced information was of such character that a reasonable likelihood existed that if produced earlier it would have affected the outcome of the trial.

We believe these same concerns apply where sanctions have been imposed.

■ In this case defendant's counsel knew of the existence of the knife at least two days prior to the time he informed the state of its existence at that stage of the trial when the state had rested its case. We have serious doubts that introduction into evidence of this knife would have affected the outcome of the case. Therefore we find no abuse of discretion and rule this Point against defendant.

The judgment of the trial court is affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.