**STATE of Missouri, Respondent,**

v.

**James W. MANNING, Appellant.**

**No. 41715.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 10, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 13, 1981.

Application to Transfer Denied
April 6, 1981.

Charles M. Shaw, Clayton, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Presiding Judge.

Defendant was convicted of manslaughter in violation of § 565.005 [1] and was sentenced to two years imprisonment. Defendant raises three instances of trial court error on appeal: 1) failure to instruct on driving in a careless and imprudent manner as a lesser included offense of manslaughter; 2) failure to suppress a confession and statements against interest; and 3) failure to grant defendant's motions for acquittal based upon the state's failure to present sufficient evidence of defendant's culpable negligence. We affirm.

Presented in the light most favorable to the state, the facts are as follows. On the evening of August 10, 1978, defendant, James Manning, age 16, picked up his friend, David Ray and the two proceeded to a party in the City of Rock Hill. There defendant met Michael Bell. During the course of the evening defendant and Bell had a conversation concerning their automobiles. Although it is unclear from the testimony as to who initiated the challenge, Bell and defendant agreed to race their automobiles. Defendant's automobile was a 1972 Monte Carlo with 110,000 miles and two bald front tires.

---

1. All references are to RSMo 1978.

After leaving the party and entering their respective cars, both drivers proceeded west on Kirkham Road a short distance and made a U-turn at Gore Avenue. The two young men brought their cars to a stop, side by side, in the eastbound lane of Kirkham Road. Across the street, Officer Walsh, a Webster Groves Police Officer, sat in his car on routine patrol. Oblivious to Officer Walsh, the two drivers raced their motors, squealed their tires and proceeded east on Kirkham at a top speed of 50 mph in a 35 mph zone. Officer Walsh pursued the two cars. When the officer turned on his flashing red lights, Bell immediately pulled off to the side of the road. However, defendant at the sight of Officer Walsh accelerated quickly. Officer Walsh pulled over to Bell's car, ordered him to stay there until another police officer arrived and then pursued defendant. There is some dispute as to the reason for defendant's attempt to evade Officer Walsh, but it is of no concern for our review.[2] Ultimately, at least three police vehicles from three jurisdictions were involved in the chase. Defendant proceeded at a high rate of speed on Kirkham until it became Brentwood Boulevard. Defendant then turned right at Manchester Road, narrowly missing another automobile. He proceeded east on Manchester, made a U-turn at Hanley Road and proceeded west on Manchester. As he reached the crest of a hill on Manchester, at the point where Manchester intersects with Brentwood Boulevard, the traffic light turned yellow. Defendant applied the brakes after the light turned red, skidded 201 feet and collided with a vehicle driven by Sharon Lee Coons. Coons had entered the intersection on the green light. In colliding into Coons' vehicle defendant welded his automobile into Sharon's door and propelled her vehicle 191 feet before the agglutinated wreckage came to a rest.[3] Sharon suffered massive injuries, the most severe being to her brain and skull. She succumbed shortly following the crash.

During the chase, defendant's speed was estimated at various times to be from 60 mph to 120 mph. At the point immediately prior to the accident, he was traveling at least 70 mph according to one officer and as much as 110 mph according to another officer. The speed limit on Manchester Road, at the point of impact is 30 mph.

■ We will first consider defendant's allegation which challenges the sufficiency of the evidence. In determining whether the state made a submissible case, the appellate court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence. All evidence and inferences to the contrary are to be disregarded. Any portion of the defendant's evidence which supports a finding of guilty is also to be considered because defendant, by putting on evidence, takes the chance of aiding the state's case. *State v. Johnson,* 447 S.W.2d 285, 287–290 (Mo.1969). Defendant filed a motion for a verdict of acquittal at the close of the state's case and again at the close of all the evidence. We will consider only the latter motion because by introducing evidence in his own behalf defendant waived any error in the action of the court in overruling his motion at the close of the state's case. *State v. Hill,* 438 S.W.2d 244, 247 (Mo.1969).

■ Defendant asserts that there was not sufficient proof adduced of his culpable negligence. By indictment, defendant was charged with "carelessly, recklessly, feloniously and with culpable negligence" killing Sharon Coons in an automobile collision. Section 565.005 provides that "Every killing of a human being by the act, procurement or culpable negligence of another, not herein declared to be murder or excusable or justifiable homicide, shall be deemed manslaughter." The rule is well established that negligence to be deemed culpable within the meaning of the manslaughter statute

2. Defendant testified that he thought the officer chasing him was an officer from Rock Hill whom he feared. However, the state presented evidence, that after the accident defendant stated he had a pending charge for driving while intoxicated and that he feared getting another.

3. Thus, defendant slid a total of 392 feet before coming to a complete stop.

is something more than ordinary, common law, or actionable negligence. The culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life. *State v. Morris*, 307 S.W.2d 667, 672 (Mo. 1957). The fundamental requirement to fix criminal responsibility for the consequences of culpable negligence is knowledge actual or imputed that the negligent act would tend to endanger human life. *State v. Morris*, 307 S.W.2d at 672. Culpable negligence "means disregard of the consequences which may ensue from the act, and indifference to the rights of others. No clearer definition, applicable to hundreds of varying circumstances that may arise, can be given." *State v. Kays*, 492 S.W.2d 752, 760 (Mo.1973).

Defendant argues that the evidence established only that he was driving carelessly and imprudently, but not that he did so with reckless or utter disregard for human life. He supports this claim by pointing to the fact that during the high speed chase there was little traffic and he endangered no one up until the time of the collision. He asserts that he tried to avoid the collision which killed the victim by braking and swerving his automobile when it became clear that the victim would remain in the intersection. He further contends that he would not have attempted to stop if he had an utter disregard for human life. In oral argument, defendant continued in this vein pointing to his deep remorse and concern for his passenger as well as for the deceased following the accident as evidence of his value for human life. We disagree.

Defendant conveniently ignored several things. Most importantly, the facts and inferences viewed in a light most favorable to the state clearly establish that he set powerful forces into operation which he failed to control and that he was indifferent to the perilous and hazardous consequences which were the result of his actions. Defendant sped away from a police officer who properly attempted to stop defendant. Defendant then led the lengthy high speed chase which ensued with the knowledge that his tires were in poor condition and that this affected his braking ability.[4] The evidence shows defendant sped through two electric signal controlled intersections along two well traveled streets containing many driveways from which passenger laden automobiles could enter at any time. Such conduct can only be characterized as performed with an utter disregard for defendant's own life, his passenger's life, the victim's life and the life of every other person on the road. As the court in *State v. Morris*, 307 S.W.2d 667, 672 (Mo.1957) stated:

> [T]he jury could have inferred that appellant, when he continued to operate his automobile at a high rate of speed . . ., was grossly indifferent to the danger to himself and others and was proceeding in utter disregard of human life. We must and do hold that there was substantial testimony to show that defendant was guilty of culpable negligence in operating the automobile . . .

Defendant cites *State v. Cutshall*, 430 S.W.2d 173 (Mo.1968); *State v. Morris*, 307 S.W.2d 667 (Mo.1957) and *State v. Herring*, 502 S.W.2d 405 (Mo.App.1973) in support of his argument. However, a review of these cases, in which automobile manslaughter convictions were affirmed, reveals less evidence of culpable negligence than is present in this case. For example, in *Cutshall* the

---

4. One can only wonder how long it would have taken appellant to stop, including reaction time, if he had not struck the decedent's automobile. It would indeed have been substantially longer than 392 feet. As a point of comparison, at 70 mph, including ¾ of a second reaction time, it would take a car 328 feet to come to a complete stop. *Missouri Drivers Guide*, 21 (Revised January, 1980). Although the *Missouri Drivers Guide* does not show a stopping distance for an automobile traveling in excess of 100 mph we can extrapolate that the stopping distance for an automobile traveling 110 mph would be 742 feet. While we cannot take judicial notice of the exact distance within which a particular automobile may be stopped under given conditions, we do note the limits above within which a stop can be made. *Eaves v. Wampler*, 390 S.W.2d 922, 930 (Mo.App. 1965). The above figures assume reasonably good tires which appellant knowingly did not have.

defendant, who had been drinking, was driving 65-70 mph in a 55 mph zone when he swerved and hit a car on a bridge. The court had no difficulty in affirming the conviction and found sufficient evidence of defendant's culpable negligence. Here, we have far more evidence of defendant's culpable negligence. This point is ruled against appellant.

In Point II, defendant alleges that the court erred in failing to suppress statements he made shortly after the collision. Defendant contends suppression of the statements was proper because he was in à hysterical condition and unable to understand the *Miranda* warnings. We disagree.

While sitting in the backseat of a police cruiser at the scene of the accident, Officer Wagner read defendant the *Miranda* warnings. After acknowledging he understood each right, defendant interjected spontaneously "I killed her; I know she's dead." Later the officers testified that defendant stated "that he had a D.W.I. charge pending and he didn't need any other tickets." Both Officer Wagner and Peterson testified without objection to these statements. Prior to trial defendant filed a motion to suppress the statements. It was denied. When a motion to suppress evidence is denied and the evidence is offered, the defendant must object at the trial to preserve his contentions for appellate review. *State v. Howard*, 564 S.W.2d 71, 74 (Mo.App. 1978). See also *State v. Pruitt*, 556 S.W.2d 63, 65 (Mo.App.1977). Defendant did not object and the record reveals no error, plain or otherwise. Therefore defendant's point two is denied.

Defendant also argues that the trial court erred by failing to submit an instruction on careless and imprudent driving. Defendant contends submission of an instruction on careless and imprudent driving was required because the latter offense is a lesser included offense of manslaughter. We disagree. It is the trial court's obligation to instruct on all lesser included offenses supported by the evidence and it is error for the court to fail to do so. *State v. Stone*, 571 S.W.2d 486, 487 (Mo.App.1978).

However, the trial court may not instruct on an offense which is not charged by the indictment or information. To do so would be a violation of due process of law because the defendant could be convicted of a crime for which he was not charged. *State v. Billingsley*, 465 S.W.2d 569, 570 (Mo.1971).

The oft stated test in Missouri to determine if one offense is included within another is stated in *State v. Amsden*, 299 S.W.2d 498, 504 (Mo.1957) as follows:

> If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater.

As recited earlier, the elements of manslaughter are: (1) the killing of a human being (2) by the act, procurement or culpable negligence of another (3) which is neither murder nor excusable homicide. § 565.005. The statutory provision dealing with careless and imprudent driving, § 304.-010.1, provides:

> Every person operating a motor vehicle on the highways of this state shall drive the vehicle in a careful and prudent manner and at a rate of speed so as not to endanger the property of another or the life or limb of any person and shall exercise the highest degree of care.

A comparison of the legal elements of the two crimes clearly reveals that careless and imprudent driving is not a lesser included offense of manslaughter under the *Amsden* test. The elements of 1) driving a vehicle 2) on a highway of the State of Missouri are not elements of manslaughter, while they are elements of careless and imprudent driving. Further, a person could be convicted of careless and imprudent driving if he endangers the property of another. But, one may be convicted of manslaughter only if he takes the *life* of another. It is clear under the facts that defendant, if he had been charged with careless and imprudent driving, could have been convicted of that crime as he did drive a vehicle on a state

highway and did endanger the life of another. However, as Judge Smith, of this court, stated:

> From th[e] ... [test in *Amsden*] it can be seen that an offense does not become a lesser included offense because all of the elements of the lesser offense are supported by evidence at the trial. Rather, all elements of the lesser offense must be necessary to establish the greater offense when added to an additional element or elements. In short, the fact that the evidence establishes guilt of the defendant of a lesser crime does not necessarily mean that the crime is a lesser included offense and must be instructed upon.
>
> It is at least arguable that our criminal procedure should be structured so that a defendant may upon specific request require that the jury be instructed on designated crimes of lesser magnitude which are supported by the evidence. Such a request could and should constitute a waiver of defendant's right to be convicted only of those crimes charged or necessarily included in the crimes charged.... However, our law does not require such an instruction.

*State v. Stone*, 571 S.W.2d at 487.

Defendant urges us to follow *United States v. Pino*, 606 F.2d 908 (10th Cir. 1979). In *Pino*, an automobile manslaughter conviction, the court held that the trial court must look at the "practical terms of the evidence developed ... on the offense charged." The court then ruled that an instruction on careless and imprudent driving should have been given even though establishing defendant's guilt of careless and imprudent driving required proof of legal elements which were not required in proving manslaughter. *United States v. Pino*, 606 F.2d at 916.[5] However, this is not the test in Missouri and consequently the *Pino* analysis is not convincing or persuasive.

Also in his supplemental brief defendant cites the recent decision of the U.S. Supreme Court in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) in support of the proposition that submission of an instruction on careless and imprudent driving was required. However, the issue in *Vitale*, was whether the defendant having been convicted of failure to reduce speed could subsequently be convicted of manslaughter and whether the double jeopardy provisions of the fifth amendment had been violated. This is not the issue presented before us. Point III is ruled against defendant.

Affirmed.

WEIER and GUNN, JJ., concur.

---

**5.** *Pino* relied principally upon *United States v. Whitaker*, 447 F.2d 314 (D.C. Cir. 1971) for this "practical test." *Whitaker*, held that breaking and entering was a lesser included offense of burglary even though there were elements of breaking and entering not within burglary. However, this court has held that breaking and entering is not a lesser included offense of burglary. *State v. Fleming*, 528 S.W.2d 513 (Mo.App.1975).