**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Marvin Darrell RHODEN,
Defendant-Appellant.**

No. 12834.

Missouri Court of Appeals,
Southern District,
Division Two.

June 30, 1983.

John D. Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Dan K. Purdy, Osceola, for defendant-appellant.

PREWITT, Judge.

Following jury trial, defendant was convicted of manslaughter, § 565.005, RSMo 1978, and sentenced to six months in the county jail and fined $1000. Defendant was charged with manslaughter "in that defendant unlawfully killed Kenneth R. Worthy by defendant's culpable negligence in operating a motor vehicle on or about the 18th day of September, 1981".

We first consider defendant's contention that the evidence was insufficient to support the conviction. He contends that although the evidence indicates he was negligent, it does not rise to the level of "culpable negligence". See § 565.005, RSMo 1978. In our review we accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Manning,* 612 S.W.2d 823, 825 (Mo.App.1981).

For negligence to be deemed culpable within the meaning of the manslaughter statute it must be something more than ordinary common law or actionable negligence; the culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life. Id., 612 S.W.2d at 825–826. The fundamental requirement to fix criminal responsibility for the consequences of culpable negligence is knowledge, actual or imputed, that the negligent act would tend to endanger human life. Id., 612 S.W.2d at 826. Culpable negligence means disregard of the consequences which may ensue from the act and indifference to the rights of others; no clearer definition applicable to the hundreds of varying circumstances that may arise can be given. Id. See also *State v. Hughey,* 404 S.W.2d 725, 730–731 (Mo.1966); *State v. Herring,* 502 S.W.2d 405, 409 (Mo.App.1973).

The collision out of which the charge arose occurred on September 18, 1981, on Highway 60 in Greene County, Missouri, just west of the Springfield city limits. At that point Highway 60 is a divided four-lane concrete highway running generally east and west. There are two lanes for traffic in each direction with a grass median dividing the lanes. Decedent was a passenger in a 1956 Chevrolet automobile, hereinafter car, and defendant was operating an unloaded 1973 Chevrolet dump truck, hereinafter truck, pulling a trailer. Both were going in an easterly direction in the lefthand eastbound lane of Highway 60. In the direction that they were traveling, the road had a slight downhill grade. The front of the truck struck the rear of the car as the car was starting to turn left into a paved crossover in the median. It occurred during daylight hours on a sunny day. The pavement was dry and the traffic heavy at the time. Defendant tried to swerve the truck to the right but was not able to swerve far enough to avoid the car. Both vehicles traveled a considerable distance after the collision and there was extensive damage to both, but particularly to the car. The decedent had been in the rear seat of the car and was found lying in the front seat after the collision. Medical testimony established that he died as a result of a chest injury received in the collision.

There was evidence that just before the collision defendant was operating the truck at a speed of 65 miles per hour; that he knew that the brakes of the truck were not functioning properly; that the car was in front of the truck in the same lane of travel and proceeding in the same direction; that more than 300 feet from the point of impact, while going 40 to 45 miles per hour, the operator of the car applied its brakes and started to slow, which put on the car's rear brake lights; that 200 feet from the point of impact the car's turn signal indicating a left turn went on; that the car gradually slowed until it was going 10 to 15 miles per hour at the time of collision; that although visibility was "unlimited", that defendant did not see the car until it was two car lengths from him; and that although

defendant applied the truck's brakes, it was still moving at 65 miles per hour when they collided.

Testimony as to the weight of the truck and trailer together varied from 31,000 to 27,000 pounds. There was evidence that the truck alone weighed approximately 25,000 to 26,000 pounds. A truck driver, who had driven the truck regularly until a month before the collision, testified she had quit driving it because the owner would not fix the brakes and they were in such a condition that she considered it dangerous to operate the truck. The evidence indicated that the brakes were still operating in the same manner at the time of the collision. To aid the brakes, when stopping the truck, both the prior driver and defendant shifted the gears down. The defendant also complained to the owner about the brakes and was told that they would be fixed "pretty soon". Defendant continued to drive it thereafter because he needed the job. Defendant testified that the brakes did not work "as good as they should." He stated that because of this in operating the truck he "tried to be more careful, you know, about staying back off of things, further back." There were no brakes on the front axle of the vehicle and of the four brakes on the twin rear axles only one worked properly. There was evidence that to put the brakes in proper working order would cost $1500 to $2000.

It can certainly be anticipated that while driving on a heavily traveled highway a situation may occur in which the brakes of the truck would have to operate properly in order to avoid a collision and that if the truck collided directly with a car it could cause death to an occupant of the car. Operating a vehicle of the truck's weight, knowing its brakes were inadequate, in excess of the speed limit in considerable traffic, and while not keeping a careful lookout indicates "a reckless or utter disregard for human life." Knowledge that this would tend to endanger human life can be imputed to the defendant and if the evidence favorable to the state is believed, defendant's conduct shows a disregard of the con-

sequences and an indifference to the rights of others. The evidence was sufficient for the jury to find defendant guilty of manslaughter.

■ Defendant contends in his second point that the trial court erred in permitting the decedent's widow to testify because her testimony was merely cumulative, was inflammatory, and it aroused the sympathy of the jury, all to his prejudice. Defendant's objection was to her testifying at all and no objection was made to any specific questions directed to her. When cumulative evidence should stop is within the discretion of the trial court, said discretion being exercised with relevance as the main criterion; the same test is applicable to the introduction of potentially prejudicial or inflammatory evidence. *State v. McCabe*, 512 S.W.2d 442, 444 (Mo.App.1974). The only relevant testimony from the witness was her seeing the decedent enter the rear back seat of the car, her observations at the scene of the collision shortly after it occured, and seeing him dead at the hospital a short time after the collision. This was essentially cumulative of other evidence.

■ With the state having the burden of proof, we cannot say there is an abuse of discretion here. Showing that the decedent had originally been in the back was relevant. He was found in the front seat after the accident and his movement indicates that the impact was severe. Her testimony derived from her presence at the scene also reflects the severity of the impact. Her testimony that she saw him after he was dead was the most reliable evidence that Kenneth R. Worthy was the person killed in the collision. Although her testimony might create sympathy with the jury for her, as much of it was relevant we find no abuse of discretion in allowing her to testify. There was testimony of the widow which appears to be clearly irrelevant, but no objection was made to that evidence and we find no plain error. See Rule 30.20. This point is denied.

■ Defendant's third point contends that the trial court erred in permitting Hel-en Charlene Anderson to testify that the brakes on the truck could not be adjusted because this evidence was too remote to be relevant. Remoteness in time ordinarily affects the weight rather than admissibility of testimony and whether evidence is inadmissible because it is too remote is a matter resting largely in the sound discretion of the trial court. *State v. Stanley*, 639 S.W.2d 237, 239 (Mo.App.1982). Anderson had driven the truck regularly for about a year until she quit driving it approximately a month before the collision. She testified that the brakes could not be corrected by adjustment. Defendant presented evidence that adjustments had been made to the brakes, but Anderson testified that prior attempts to adjust the brakes did not make them work properly and they needed extensive work costing from $1500 to $2000. As the evidence indicated that there were no significant changes in the brakes or their manner of operation from the time Anderson quit driving the truck until the collision, we cannot say there was an abuse of discretion in admitting her testimony. This point is denied.

The judgment is affirmed.

MAUS, P.J., and HOGAN, J., concur.