STATE of Missouri, Respondent,

v.

Ronald P. HARRIS, Appellant.

No. WD 34051.

Missouri Court of Appeals,
Western District.

March 27, 1984.

Bob J. Hiler, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P.J., and NUGENT and LOWENSTEIN, JJ.

SOMERVILLE, Presiding Justice.

This appeal was spawned when a jury found defendant guilty of manslaughter by culpable negligence in the operation of a motor vehicle (§ 565.005, RSMo 1978) and assessed his punishment at five years confinement in the Missouri Department of Corrections. Judgment was entered and sentence was pronounced accordingly.

Seven diverse points are raised by defendant on appeal: (1) the trial court erred in denying defendant's motion for change of judge and change of venue; (2) by incorporation of nine subpoints, the trial court erred in denying defendant's motion to suppress the results of a breathalyzer test; (3) the trial court erred in denying defendant's motion to strike the jury panel on grounds that it did not represent a fair cross section of the community; (4) the trial court erred in not instructing the jury on "careless driving" and in failing to define "culpable negligence" and "reckless"; (5) the guilty verdict was not supported by competent, substantial evidence; (6) the trial court erred in permitting the state to file an

amended information; and (7) the trial court erred in admitting "nude, bloody photographs" of the victim over defendant's objection.

A Spartan statement of facts discloses the following events which culminated in the fatal accident for which defendant stood trial. About "dusk" on November 11, 1981, the victim, a twenty-eight year old female, was driving a Chevrolet Malibu sedan in a westerly direction on Route 210, a two-lane highway, in Clay County, Missouri. The headlights of her automobile were on, and she was driving in her right-hand lane. Defendant was driving a 1969 Cadillac Sedan DeVille in an easterly direction on Route 210 at a speed of approximately 60–70 miles per hour. The posted speed limit in the area was 55 miles per hour. Defendant turned his vehicle to his left and went into the westbound lane to pass a vehicle that was traveling in an easterly direction ahead of him. When defendant crossed over into the westbound lane he struck the victim's vehicle head-on. Defendant was on the wrong side of the road when the collision occurred. Neither the lateral nor vertical contour of the highway posed any obstruction to visibility. The victim was pronounced dead at the scene as a result of injuries sustained in the head-on collision. Defendant was removed from the scene by ambulance. He had a "few drinks" during the afternoon preceding the accident and the odor of an "alcoholic beverage" was detected on his person following the accident. Moreover, approximately three hours after the fatal accident, defendant voluntarily submitted to a "breathalyzer test" administered by a Kansas City police officer which disclosed six hundredths of one percent by weight of alcohol in his blood.

Defendant's first point, error in denying his application for change of venue and change of judge, requires a chronological review of certain pre-trial events. Defendant was arraigned on March 4, 1982, and the case was set for trial on April 26, 1982. On April 20, 1982, defendant filed an application for continuance and the case was reset for trial on June 7, 1982. On May 17, 1982, *seventy-four (74) days* after his arraignment, defendant filed a joint application for change of judge and change of venue. Rule 32.04 (effective January 1, 1982), applicable to change of venue, requires that an application for change of venue in a felony case "must be filed *not later than thirty days after arraignment.*" (emphasis added) Rule 32.07 (effective January 1, 1982), applicable to change of judge, requires that an application for change of judge in a felony case "must be filed *not later than thirty days after arraignment* if the trial judge is designated at arraignment." (emphasis added) Defendant does not contend that the trial judge was not designated at arraignment, and if such a contention were made it would be unsupported by the record.

 Clearly, defendant's joint application for change of venue and change of judge was not timely filed and on that basis alone was properly denied by the trial court. Defendant alleged in his joint application for change of venue and change of judge, without benefit of supporting oath or affidavits, that the grounds of prejudice set forth therein, both on the part of the inhabitants of Clay County and the judge who was to try the case, first became known a day or two prior to filing said application. He conveniently argues that his joint application, although admittedly untimely under Rules 32.04 and 32.07, should have been sustained under § 545.-660, RSMo 1978 (disqualification of judges in criminal cases) and § 545.490, RSMo 1978 (change of venue in criminal cases). This argument is totally misplaced as it ignores the fact that Rules 32.04 and 32.07 control as they were promulgated after the enactment of §§ 545.660 and 545.490, supra, and no subsequent statutes have been enacted annulling or amending them. Art. V, § 5, Constitution of Missouri, 1945 (as amended August 3, 1976); *State v. Sullivan,* 486 S.W.2d 474, 477 (Mo.1972).

 The trial court on May 19, 1982, apparently under the authority of Rule 20.-

01(b)[1], afforded defendant a hearing on his untimely filed joint application for change of venue and change of judge. At the hearing, counsel for defendant made some abstract statements about threatening and disruptive anonymous phone calls purportedly received at defendant's home which he tried to convert into indicias of prejudice on the part of the inhabitants of Clay County. None of the aforementioned was supported by affidavit or sworn testimony, and counsel for defendant admitted that his abstract statements were based on hearsay. As a matter of fact, counsel for defendant further admitted that the locale from which the purported anonymous phone calls emanated was unknown and could have come from any one of several counties in the metropolitan area. Trial counsel candidly professed that it was a "guess" on his part, at best, whether any prejudice existed on the part of the inhabitants of Clay County, and, as well, whether removal of the case to some other county would alleviate any purported prejudice ostensibly relied upon. As to prejudice on the part of the judge designated to try the case, counsel for defendant made no effort whatsoever to support the charge, even by means of nebulous, abstract or conclusionary statements. When the foregoing circumstances are collectively assessed, this court is constrained to hold that the trial court neither abused its discretion in refusing to enlarge the time fixed by Rules 32.04 and 32.07 within which defendant could file an application for change of venue or change of judge, nor erred in denying defendant's application on grounds that it was untimely filed.

◼ Defendant's second point, error on the part of the trial court in refusing to suppress the results of the breathalyzer test, marshals nine grounds for its support by way of nine (9) subpoints. Five of the nine subpoints rely upon grounds never raised, directly or by innuendo, in defendant's motion for new trial. Hence, they were not preserved for appellate review and will not be considered. Rule 29.11(d); *State v. Harris*, 620 S.W.2d 349, 354 (Mo. banc 1981). This court observes, ex gratia, that the five subpoints which were not preserved for appellate review are devoid of merit, present no substantive basis for relief, and necessarily fail to scale the heights of "plain error".

◼ Before addressing the various facets of defendant's second point, error in not suppressing the results of the breathalyzer test, it is appropriate to emphasize that the state laid a proper testimonial foundation for its admission. See generally: *State v. Bush*, 595 S.W.2d 386, 388 (Mo.App.1980); *State v. Hanrahan*, 523 S.W.2d 619, 621 (Mo.App.1975); and *State v. Milligan*, 516 S.W.2d 795, 797–98 (Mo.App.1974).

◼ The first of the four subpoints under point two preserved for appellate review charges that the results of the breathalyzer test should have been suppressed because the test was administered some three and one-half (3½) hours after the fatal accident. Defendant's attendant argument is highly convoluted and the only authority cited for its support is § 577.040, RSMo 1978 (in effect both at the time of the offense and at the time of trial).[2] Seizing upon the language in § 577.040, supra, that "[A]n arrest without a warrant [for the offense of 'driving while intoxicated', § 577.010, RSMo 1978] must be made within one and one-half hours after such claimed violation occurred", defendant summarily contends that a breathalyzer

1. Rule 20.01(b) reads as follows:
 "When by these Rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon notice and motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but the court may not enlarge the period for filing a motion for new trial or for taking an appeal as provided by these rules."

2. Section 577.040, RSMo 1978, was repealed L.1982 S.B. 513 § 1 and § 577.039, RSMo Supp. 1983, was enacted in lieu thereof.

test administered more than one and one-half hours after the fatal accident was inadmissible. Defendant's argument is untenable for several reasons. First, defendant was arrested for manslaughter rather than driving while intoxicated. Second, defendant, by extrapolation, has sought to extend the meaning of the referred to statutory language far beyond the explicit intent and purpose of the statute. Third, evidence adduced by the state showing that defendant had not ingested any other liquids during the interim between the accident and administration of the breathalyzer test, that the test was voluntarily submitted to by defendant, and that the human body "metabolizes" alcohol at the "rate of .017 percent per hour", apart from any consideration of § 577.040, supra, strips defendant's first subpoint of any efficacy. In reality, defendant advocates a gross misapplication of § 577.040, supra, far beyond its clearly avowed intent and purpose.

■ The next subpoint, that the results of the breathalyzer test should have been suppressed because the trial testimony of the police officer who administered it differed from that contained in an "alcohol influence report" previously submitted, affords no basis for relief. A copy of the previously submitted report furnished defendant on discovery made no mention that defendant's eyes were "watery" and his pupils were "dilated". However, the reporting officer testified at trial that defendant's eyes were "watery" and his pupils were "dilated" and that his original report conformed with his testimony. Trial counsel for defendant vigorously cross-examined the police officer concerning the discrepancy. The officer admitted the discrepancy and testified that he was unable to explain or account for its occurrence. Defendant seeks to categorize the officer's testimony as perjurious, thereby necessitating a new trial. It was incumbent upon defendant to show that the alleged perjurious testimony was deliberately falsified, known to be false by the prosecution, and that his conviction was obtained by reason thereof. *State v. Flauaus*, 515 S.W.2d 873, 880 (Mo.App.1974); and *State v. No-*lan, 499 S.W.2d 240, 250 (Mo.App.1973). The controversial discrepancy did not directly bear on the result of the breathalyzer test which was the principal subject of the officer's testimony. Although it went to the weight and credibility to be given the officer's testimony regarding the result of the breathalyzer test, it did not terminally infect such testimony with perjury. Moreover, the record fails to demonstrate that the controversial testimony was deliberately falsified or that defendant's conviction was obtained by reason thereof.

■ By way of another subpoint, defendant insists that the results of the breathalyzer test should have been suppressed because a police officer who did not administer the test was permitted to testify as to the result. The officer in question was present when the breathalyzer test was administered by a fellow officer and observed the result registered. Defendant claims the testimony by the non-administering officer was hearsay. This argument stretches the hearsay rule beyond recognition. Moreover, the testimony in question was cumulative in view of testimony of the officer who administered the breathalyzer test. Defendant's argument falls of its own weight and affords no ground for reversal.

■ Defendant's final subpoint attempts to build error on the trial court's refusal to permit defense counsel to demonstrate in court a different breathalyzer machine for the purpose of cross-examining the officer who administered the breathalyzer test to defendant. Demonstrations before a jury rest within the sound discretion of the trial judge. *State v. Sadler*, 613 S.W.2d 682, 686 (Mo.App.1981). The proffered demonstration, which was refused by the trial court, insofar as relevant to circumstances and conditions existing at the time the breathalyzer test in question was administered, would have merely personalized or dramatized certain matters probed by defense counsel on cross-examination of the officer in question. Since the proposed demonstration, when equated with substan-

tially the same or similar facts shown in evidence, would have served no purpose other than to dramatize the cross-examination conducted by defense counsel, the trial court did not abuse its discretion in refusing same. *State v. Booker,* 631 S.W.2d 854, 857 (Mo.1982).

Defendant's cry of error because of the trial court's denial of his motion to strike the jury panel on grounds that it was unconstitutionally structured (point 3) has a hollow ring. No evidence was presented by defendant in support of the motion to strike the jury panel. It was presented to the trial court solely on the basis of certain abstract statements made by trial counsel. The charge that a jury panel is unconstitutionally structured, while easy to level, is not self-proving. Those who advocate such a charge carry a heavy burden when the time to substantiate it comes. "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the groups in the jury-selection process." *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Under state law jury panels are uniquely county oriented, hence their composition groupwise necessarily varies from county to county and general statistics have no intercounty viability. In sum, defendant's attack on the jury panel on constitutional grounds was not supported by even a scintilla of evidence.

Defendant's fourth point rests on alleged instructional error: (1) failure to instruct on the "lesser included offense" of "careless driving"; (2) failure to define "culpable negligence" and "reckless"; and (3) the state's verdict director "was outside the scope of the first amended information." An identical claim of instructional error in a manslaughter case, failure to instruct on careless and imprudent driving as a lesser included offense, was raised and rejected in *State v. Manning,* 612 S.W.2d 823 (Mo.App.1981). Citing *State v. Amsden,* 299 S.W.2d 498, 504 (Mo.1957), the court in *Manning* held that "[a] comparison of the legal elements of the two crimes clearly reveals that careless and imprudent driving is not a lesser included offense of manslaughter under the *Amsden* test." *State v. Manning,* supra, 612 S.W.2d at 827. There is no merit to the first facet of defendant's trifurcated charge of instructional error.

Nor is there any merit to the second facet of defendant's multicharge of instructional error. Defendant seeks to instill error by reason of the trial court's failure to instructionally define "culpable negligence" and "reckless". MAI–CR2d 15.20, upon which the state's verdict director was patterned, contains the term "reckless" but does not contain the term "culpable negligence". It is inconceivable that the trial court could be charged with error for failing to instructionally define a term nowhere found in an instruction. Although the term "reckless" was contained in the state's verdict director, the "Notes on Use" appended to MAI–CR2d 15.20 neither require nor permit a definition of any of the terms employed in said instructions. Moreover, paragraph 8 of the "Notes on Use" appended to MAI–CR2d 33.00 (captioned "Definitions-General Form") contains the following admonition:

"Unless the Notes on Use expressly require or permit the definition of a term, word or phrase, it must not be defined even if requested by counsel or the jury. *State v. Abrams,* 537 S.W.2d 408 (Mo. banc 1976). In short, the Notes on Use under the MAI–CR forms approved or reapproved after May 1, 1978 give complete and exclusive directions as to all terms, words or phrases which either must or may be defined."

This court would be remiss in stamping a trial with instructional error simply because the mandate of MAI–CR2d was followed.

 The final aspect of defendant's claim of instructional error, i.e. that the state's verdict director "was outside the scope of the first amended information", is both unfathomable and untenable. After juxtaposing the information and the state's verdict director, this court reluctantly resigns itself to the conclusion that the point in question is incomprehensible. Moreover, defendant, apparently bent by the same burden, failed to pursue the point in the argument portion of his brief or cite any authority for its support. His failure to pursue the point by argument and cite authority for its support constituted abandonment or waiver of the point on appeal. *State v. Johnson,* 539 S.W.2d 493, 509 (Mo. App.1976).

 Defendant's fifth point, that the guilty verdict was not supported by competent, substantial evidence, is totally at odds with the record. In determining the sufficiency of the evidence "the facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded." *State v. Franco,* 544 S.W.2d 533, 534 (Mo. banc 1976). Closely akin, the function of a reviewing court "is not to weigh the evidence but to determine whether there was sufficient evidence from which reasonable persons could have found appellant guilty as charged." *State v. Devall,* 654 S.W.2d 172, 175 (Mo.App.1983). A combination of alcohol, excessive speed, and driving on the wrong side of the road unleashed a destructive force which brought about the victim's death. Cumulatively, it evidenced a reckless or utter disregard for human life on the part of defendant, the very essence of manslaughter by culpable negligence in the operation of a motor vehicle. *State v. Hughey,* 404 S.W.2d 725, 730–31 (Mo.1966). Although evidence of five-hundredths of one percent by weight of alcohol in a person's blood, or more, but less than ten-hundredths of one percent, did not give rise to a presumption of intoxication, it could be considered with other competent evidence in determining whether defendant was in-

toxicated. Section 577.030.1(2), RSMo 1978 (in effect at the time of the occurrence and at the time of trial). The combination of facts and circumstances heretofore mentioned, in terms of constituting substantial, competent evidence to support a conviction for manslaughter by culpable negligence in the operation of a motor vehicle, is amply supported by *State v. Carter,* 451 S.W.2d 340 (Mo.1970). Defendant peripherally attacks the sufficiency of the evidence on the basis that the victim was never properly identified. This is contradictory to defendant's own testimony on direct examination. He was asked, "Was Robin Whittle, was she killed in the car wreck?" and he replied, "Yes, she was." Moreover, numerous references as to the victim's identity were made by various witnesses for the state without objection.

 The sixth point raised by defendant, error on the part of the trial court in permitting the state to file an amended information, affords no basis for relief. If correctly perceived, defendant argues that the original information failed to charge any specific instances of "culpable negligence", thereby rendering it so defective as to be unamenable to being amended. This argument is dispelled by *State v. Beck,* 449 S.W.2d 608, 611 (Mo.1969): "It is not essential that an information charging manslaughter by culpable negligence in the operation of a motor vehicle set out in detail the particulars of which such carelessness, recklessness and culpable negligence consist." *State v. Beck,* supra, was cited in *State v. Devall,* supra, at 175, as authority to uphold the sufficiency of an information virtually identical to the one in the instant case. Defendant also contends that the amended information failed to sufficiently apprise him of the charge for which he was put to trial. Suffice it to say, the amended information tracked the original information in every respect but one—the original information cited § 559.070 [RSMo 1969] and the amended information cited § 565.-005 [RSMo 1978]. Both statutes are identical and it defies credulity to believe that defendant was in any way misled, sur-

prised or confused by the amended information. An erroneous statutory citation in an original information is subject to amendment if the original information contains the essential elements of the offense. *State v. Jackson*, 594 S.W.2d 623, 624 (Mo. 1980). Consequently, defendant's argument lacks legal efficacy. Defendant also complains that he should have been granted a continuance since the amended information was filed only three days before trial. This complaint is purged by the record as a motion by defense counsel for a continuance on the basis of the late filed amended information was withdrawn at the insistence of defendant.

Defendant's seventh and final point attributes prejudice to the admission into evidence of two "nude, bloody photographs" of the victim. "Pictures of the victims of homicides, even though gruesome, repugnant and shock provoking in nature ... have probative value if they show the nature and location of wounds inflicted upon a deceased. [citations omitted]. They possess probative value if they enable the jury to better understand the facts elicited from various state witnesses, [citations omitted]; or if they corroborate the testimony of the state's witnesses [citations omitted]." *State v. Love*, 546 S.W.2d 441, 451 (Mo.App.1976). Tested in light of this quoted excerpt, it cannot be said that the trial court erred in admitting the photographs in question. Because of the trial court's superior vantage point for gauging the probative value of photographs vis-a-vis their potential prejudicial effect, its ruling will be upheld on appeal absent a showing of an abuse of discretion. *State v. Broadnax*, 572 S.W.2d 224, 227 (Mo.App.1978). No abuse of discretion was shown in the case sub judice. The real crux of defendant's complaint about the photographs, as garnered from the argument portion of his brief, was that he was black and the victim was white. This distinction was hammered at by defendant throughout the trial and the photographs did not exclusively dis-

close the fact. Defendant's seventh point affords no basis for appellate relief.

Judgment affirmed.

All concur.