**STATE of Missouri, Respondent,**

v.

**Patricia Ann PREWITT, Appellant.**

**No. WD 37196.**

Missouri Court of Appeals,
Western District.

April 29, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1986.

Application to Transfer Denied
Sept. 16, 1986.

Robert Beaird, Kansas City, for appellant.

William L. Webster, Stephen D. Hawke, Jefferson City, for respondent.

Before CLARK, C.J., and SHANGLER and KENNEDY, JJ.

KENNEDY, Judge.

Defendant-appellant Patricia Ann Prewitt appeals from a conviction of capital murder, § 565.001, RSMo 1978, and a sentence of life imprisonment without eligibility for probation or parole for 50 years.

Judgment affirmed.

Defendant does not challenge the sufficiency of the evidence; therefore, a brief statement of the facts will suffice.

In the early morning hours of February 18, 1984, defendant and her husband Bill returned to their Holden, Missouri, home after an evening of socializing with friends. Defendant testified that at some time after both she and Bill had fallen asleep she was awakened by a sound like thunder. She was grabbed by the hair and pulled from the bed by an unknown assailant who then tried to rape her. Defendant related that after the intruder left she heard her husband making gurgling noises but was unable to see him in the completely dark bedroom because the lights were not working. She stated that she got a flashlight and, after seeing blood on her husband, awakened the children and drove with them to a neighbor's home for help.

Evidence at trial showed that the victim was shot with a .22 caliber repeater rifle which was normally kept unloaded in the Prewitts' bedroom closet behind a chest of drawers. Bullets were stored in a drawer and in defendant's jewelry box. The rifle was found three days later in the Prewitts' pond in 11 inches of water 15 feet from the bank. A footprint made by Patricia's boot was observed on the pond bank and, after the pond was drained, another footprint was found on the pond bottom near the rifle.

Dr. James Bridgens, a forensic pathologist, testified that in his expert opinion William Prewitt was asleep immediately before he was shot twice in the head. The second shot severed the brain stem and caused instant death. Dr. Bridgens also testified that the angle of the second shot indicated the gun would have been held "almost on top" of anyone sleeping in the bed with the victim.

Testimony was adduced as to defendant's numerous extramarital affairs. Two of her lovers testified that defendant had offered them money to kill her husband. A third testified that she told him she wished Bill were dead and had considered shooting him in his sleep.

I

Defendant alleges that the court erred in allowing testimony about statements given by her to the police before she was advised of her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Defendant made four separate statements to the police: two on February 18, 1984, the day of the murder, and two on February 20, 1984, after she had appeared at the Holden police station and had been given the *Miranda* warnings. Defendant appeals the admission of testimony about

the February 18 statements. These statements were made to Deputy Kevin Hughes, an investigator with the Johnson County Sheriff's office. Deputy Hughes testified without objection by defense counsel that he first met with defendant at about 5 a.m. at the neighbor's home where she had fled after the murder. He related defendant's story as to the main events of the evening—the socializing, going to bed, being awakened by two claps of thunder, the attempted rape and the intruder's departure.

Deputy Hughes' second encounter with defendant was about 4 p.m. the afternoon of February 18 at the Holden police station. Defendant had come to the station at Hughes' request. The court granted defense counsel a continuing objection to this testimony based on failure to give defendant her *Miranda* rights. Deputy Hughes recounted to the jury that in the second February 18 interview defendant provided a more detailed description of the evening's events, including the attempted rape and the physical attributes of her alleged attacker. Defendant also told Hughes about hearing her husband's "rattling" breathing, about checking the children and about finding the lights inoperative. She then told Hughes that after getting a flashlight she saw blood on the bed and on the victim. Hughes recited defendant's description of her efforts to awaken and dress the children, put them in the car and go to the neighbors' house to get help.

Deputy Hughes further stated that defendant told him she and the victim had a good marriage and neither had had extramarital involvements. Defendant also responded to Hughes' inquiry about any guns in the house by explaining that the Prewitts' guns—a single-shot rifle and a repeater rifle—were hidden in the closet for the children's safety. Defendant acknowledged she had previously used the repeater rifle to shoot rats.

Deputy Hughes also related his discussion with defendant about her husband's life insurance policies and the fact she was the beneficiary. Defendant denied knowledge of the policy amounts.

On cross-examination, Hughes admitted that on February 18, between the two interviews with defendant, he had removed two life insurance policies and a number of Alfred Hitchcock murder mysteries from the Prewitt residence. The deputy also stated he was aware of the statistic that 75 percent of all murders are committed by family or friends of the victim.

In the course of the second interview defendant was tested for gunpowder residue. Hughes stated, however, that defendant was neither a suspect nor the focus of his investigation on February 18, and that he therefore did not give her any *Miranda* warnings.

On February 20 at 12:30 p.m. at the Holden police station defendant was questioned by officers Thomas Charrette and Dale Stewart. Although Officer Charrette testified that defendant was not in custody or under arrest and was free to leave, he nevertheless read to her the *Miranda* warning form and obtained her signature thereon. Deputy Hughes conducted the second February 20 interview of defendant, commencing at approximately 4:00 p.m. He also advised defendant of her *Miranda* rights and told her she was a suspect in the case. Defendant does not allege error in admission of the February 20 statements.

The trial court's ruling, if supported by the evidence, will be upheld on appeal. *State v. Greathouse,* 627 S.W.2d 592, 595 (Mo.1982); *State v. Baskerville,* 616 S.W.2d 839, 843 (Mo.1981). *Miranda* warnings must be given when there is a custodial interrogation. *United States v. Turpin,* 698 F.2d 351, 354–55, *appeal after remand,* 707 F.2d 332 (8th Cir.1983). The rule in *Miranda* does not obtain until there is both custody and questioning. *State v. Kemper,* 629 S.W.2d 624, 626 (Mo.App. 1982); *State v. Darris,* 587 S.W.2d 89, 91 (Mo.App.1979). The *Miranda* court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his free-

dom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. In *State v. Bradley*, 670 S.W.2d 123 (Mo.App.1984), the court set out a three-prong test for determining "custody": (1) probable cause to arrest the accused; (2) focus of the investigation on the accused at the time of questioning; and (3) the subjective intent of the police. Custodial interrogation begins when the police have reason to believe a crime has been committed and the defendant committed it. *State v. Deloch*, 628 S.W.2d 954 (Mo.App.1982); *see also State v. Starkey*, 536 S.W.2d 858 (Mo.App.1976).

In *Greathouse*, 627 S.W.2d at 594, the court stated that custodial interrogation does not exist if the person is not in custody because he is not a suspect or, if he is a suspect, when he is not under arrest or otherwise restrained of his liberty. In *State v. Swingler*, 632 S.W.2d 267, 272 (Mo.App.1982), the court considered noncustodial defendant's interview at a hospital where he had sought treatment for a gunshot wound. The questioning was investigatory, not accusatory; defendant was interviewed as a victim, not a suspect on whom the investigation had focused. *See also State v. Overstreet*, 551 S.W.2d 621, 628 (Mo. banc 1977). The United States Supreme Court has held that police do not have to warn each person they question, whether the questioning takes place at the police station or because the questioned person is "one whom the police suspect". *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).

■ Defendant alleges that she should have been advised of her *Miranda* rights prior to questioning by Deputy Hughes on February 18. The first interview, at 5 a.m. at the neighbors' home was part of Hughes' initial on the scene investigation. Defendant was neither a suspect nor in custody at that time. She was questioned as a victim, not a perpetrator. *Overstreet*, 551 S.W.2d at 628; *State v. Hayes*, 597 S.W.2d 242, 246 (Mo.App.1980). *Miranda* did not apply. Defendant next alleges that Officer Hughes considered her a suspect when the second Feb. 18 interview took

place because Hughes had previously seized the insurance policies and Hitchcock books from defendant's home. He explained to defendant that she was being given the gunpowder residue test because of his belief that 75 percent of all murders were committed by family or friends. Hughes testified, however, that on Feb. 18 he did not consider defendant a suspect; his investigation had not focused upon her. While the interview was conducted at the police station, defendant was not in custody, was free to leave, and did so when the interview was concluded. There was sufficient evidence to support the trial court's ruling that *Miranda* warnings were not required because defendant was not subjected to custodial interrogation on February 18. This point is denied.

Defendant also challenges the voluntariness of her statement on February 18 based on *State v. Gibson*, 547 S.W.2d 861 (Mo.App.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 433, 54 L.Ed.2d 301 (1977), and *State v. Phillips*, 670 S.W.2d 28 (Mo.App.1984). These cases apply the voluntariness standard to custodial interrogation. Because defendant was not in custody on Feb. 18, this point is denied.

## II

Defendant seeks appellate review on five other grounds: (1) the trial court erred in failing to grant a new trial because of a bailiff's communication to the jury; (2) the trial court erred in failing to grant a new trial because of the state's failure to disclose the statement of Ethel Stephens; (3) the court erred in sustaining the state's challenge of certain jurors for cause; (4) the court erred in allowing testimony about defendant's extramarital affairs and solicitations to murder her husband, and (5) the court erred in admitting physical evidence seized without a warrant.

### (1) *Bailiff's communication to jury.*

■ Evidence on this point is contained in the parties' stipulation at the hearing on defendant's new trial motion:

During deliberations the jury orally informed the bailiff that they were split

and asked if they could speak to the Judge....

Prior to counsel's reaching chambers, the court directed the bailiff to inform the jury that they could not speak with the Court and that they should continue their deliberations. This directive was also oral.

The bailiff went to the jury room where he modified the Court's directions by stating: "the Judge says try harder." This statement was made to the jury panel in the jury room as they were deliberating.

It has also been agreed by the State and the defense that this remark by the bailiff was made after conversation with the Court and during that conversation the bailiff, who was new on the job and had just assumed his duties, made an inquiry of the Court as to what would occur if they were not able to reach a verdict or more time was needed and the Judge said, "Well, the jury would just have to try harder."

The bailiff being new on his job then took that remark and transmitted it to the jury room. The Court, of course, did not intend that remark to be transmitted. The bailiff, I think, probably did that out of just lack of knowledge of the job since it was his first trial, as I understand it.

Defendant argues that the bailiff's statement was literally an "instruction", i.e., a directive by the court to the jury. Defendant argues further that the statement was a "generic" hammer instruction directing the jury to increase their effort to reach a verdict. The state's position is that, because the bailiff's statement was not authorized by the trial judge or made by him, it is not an instruction. An "instruction" is "the written address of the trial judge informing the jury of the law ... and their duties thereunder." *Sherman Investment Co. v. Sheehan,* 199 S.W.2d 922, 925 (Mo. App.1947). We agree that the bailiff's comment was not an "instruction."

Defendant suggests alternatively that the bailiff's comment was an out of court communication between the jury and a third party after deliberation had begun, in violation of § 546.240, RSMo 1978. In a 1984 case, the Supreme Court construed § 546.240 and stated that communications to the jury during deliberation are presumed prejudicial, a presumption which may be rebutted by competent evidence. *State v. Babb,* 680 S.W.2d 150, 152 (Mo. banc 1984). The state offered an affidavit of each juror which stated that his or her verdict was not influenced by the bailiff's comment. The court expressed uncertainty as to whether a juror may so testify to support a verdict. *Compare State v. Scrivner,* 676 S.W.2d 12 (Mo.App.1984), and *State v. Hayes,* 637 S.W.2d 33, 38 (Mo.App.1982) *with Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892). Based on concern about this uncertainty the trial court considered the issues separately and apart from the affidavits. The court noted the jury had deliberated two hours before lunch and two hours after lunch and that the bailiff's remark at that point could be seen as merely an encouragement to the jury with no element of coercion. The court also noted the paucity of evidence that the jurors were in fact coerced to reach a guilty verdict by being told to "try harder". Each juror, upon being polled, affirmed his or her verdict. The trial court's decision is reviewable only for abuse of discretion. *Babb,* 680 S.W.2d at 152. We find the trial court properly overruled defendant on this point.

### (2) *Statement of Ethel Stephens.*

Defendant claims error based on the state's failure to disclose a statement allegedly made by one Ethel Stephens to Sheriff Norman during the sheriff's investigation of the crime. At the hearing on defendant's motion for a new trial Ms. Stephens, a neighbor of the Prewitts, testified that at 12:30 a.m. on February 18 she had observed an unfamiliar car with one occupant parked on a lightly traveled dirt road near her home—two to three city blocks from the Prewitt home. Ms. Stephens stated that the Prewitt home can be seen at several points along this road, although not visible from the point where the automobile was parked.

There was conflicting testimony at the hearing as to whether Ms. Stephens relayed this information to the sheriff. She testified she did so some few days after the murder when Sheriff Norman was looking at a nearby well. The sheriff denied any recollection of the conversation. He reviewed his case file and found no report of a contact with Ms. Stephens. The state asserts this information was not relayed to the prosecutor's office; hence, there was nothing to disclose. This conflicting testimony presented a question of fact as to whether Ms. Stephens had indeed conversed with Sheriff Norman about the automobile and its occupant. The trial court was free to find, as it did, that the evidence was not known to the prosecutor and therefore could not have been disclosed to defendant. *See State v. Coleman,* 660 S.W.2d 201, 220 (Mo.App.1983).

Further, defendant (as expressly found by the trial court) was not prejudiced by omission of this evidence. The mere failure to disclose discovery materials does not entitle appellant to a new trial unless the nondisclosure resulted in fundamental unfairness. *State v. Rhodes,* 591 S.W.2d 174, 177 (Mo.App.1979). There must be a reasonable likelihood that the nondisclosed evidence, if presented at trial, would have affected the result. *State v. Dayton,* 535 S.W.2d 469, 477–78 (Mo.App.1976). In view of the plethora of evidence against defendant, Stephens' testimony, if presented to the jury, would not have constituted the substantial evidence of unfairness required to set aside the jury's verdict.

Defendant argues alternatively that Ms. Stephens' testimony was newly discovered evidence requiring a new trial. The court in *State v. Johns,* 679 S.W.2d 253, 256 (Mo. banc 1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985), delineated four bases for this assertion: (1) defendant learned of the evidence after trial; (2) defendant exercised due diligence; (3) the evidence is so material that a different result would probably obtain at a new trial; and (4) the evidence is noncumulative and not for impeachment. *See also State v. Coleman,* 660 S.W.2d 201 (Mo.App.1983). Because defendant has not satisfied the third prong, this point is denied.

(3) *State's jury challenges for cause.*

Defendant urges us to find that the trial court erred in sustaining the state's challenge for cause of jurors who expressed reluctance to convict defendant of capital murder because she was the mother of five children. Defendant complains that the prospective jurors should have been asked whether, in spite of their reservation, they could follow the court's instruction.

The state asserts, we think correctly, that the challenged veniremen's unequivocal response that they could not vote for conviction was a sufficient basis for its for cause challenge. The state also points out that defendant was free to attempt to rehabilitate the veniremen. Defendant cites no law to support her failure to do so.

The trial court's ruling on selecting and impaneling a jury will only be overturned on a showing of clear, certain abuse of discretion and real probability of injury to defendant. *State v. Draper,* 675 S.W.2d 863 (Mo.1984); *State v. Johnson,* 670 S.W.2d 882 (Mo.App.1984). The accused is entitled to a full panel of qualified veniremen from which to make peremptory challenges. *State v. Smith,* 655 S.W.2d 745 (Mo.App.1983). The decision of the trial court to strike two venirepersons for cause was upheld in *Smith,* 655 S.W.2d at 747–48, because each stated he or she could not sit in judgment of another.

In the instant case during voir dire the prosecutor asked:

> Mr. Bill Prewitt and Mrs. Prewitt had five children, would anyone, regardless of the evidence, would anyone solely because the defendant is the mother of five children be unable to vote for conviction of capital murder and send her to the Department of Corrections for life without parole for 50 years? Think about it, I want—we need to know, both sides need to know.

A positive response was elicited from Jurors Langdon, Biere, Mills and

Milbourn. The prosecutor was permitted to strike these jurors for cause. We find the trial court ruled properly because the jurors' responses indicated an inability to judge the case impartially and without prejudice. The trial court must exercise its broad discretion and strike a juror for cause when the juror's bias or preconceived prejudices are apparent. *State v. Neal*, 591 S.W.2d 178 (Mo.App.1979). The trial court's failure to excuse for cause a legitimately challenged juror would be reversible error. *State v. Ealy*, 624 S.W.2d 490 (Mo.App.1981). Defendant's point is denied.

(4) *Testimony about defendant's extramarital affairs.*

For her next point on appeal, defendant presents a challenge to the relevance of testimony about her numerous assignations and solicitations of her lovers to murder her husband. Defendant alleges the evidence should have been excluded because its probative value is outweighed by the danger of prejudice. Defendant also claims the affairs and solicitations were irrelevant because they were too remote in time, having occurred from 1979 to 1982.

■ Evidence is relevant if it logically tends to prove or disprove a fact in issue. *State v. Sanders*, 619 S.W.2d 344, 348 (Mo.App.1981); *see also State v. Knight*, 356 Mo. 1233, 206 S.W.2d 330 (1948). In a criminal proceeding, the rulings of the trial judge on questions of relevancy will only be reviewed for abuse of discretion. *State v. Ferguson*, 678 S.W.2d 873, 878 (Mo.App.1984). The time element affects the weight to be given the testimony, not its admissibility, unless so remote as to be entirely immaterial. This question is largely left to the sound discretion of the trial judge. *State v. Feger*, 340 S.W.2d 716 (Mo.1961); *State v. Rhoden*, 654 S.W.2d 352 (Mo.App.1983).

■ Admission of potentially prejudicial testimony rests within the discretion of the trial judge. *State v. Morrow*, 541 S.W.2d 738 (Mo.App.1976); *State v. O'Toole*, 520 S.W.2d 177 (Mo.App.1975). The trial court allowed the testimony based on the state's assertion that evidence of the affairs and solicitations was relevant to prove motive, to show a pattern, to show premeditation and to negate any sudden act of passion defense.

---

■ We find no abuse of discretion in admitting the proffered evidence. Messrs. Hancock, Hayes and Mitts testified to affairs with defendant. Hayes and Mitts described defendant's offer of money to kill her husband. Hancock stated defendant had wished her husband dead and had thought about shooting him as he slept. This evidence was probative of the defendant's motive and premeditation, necessary elements of proof in a capital murder case. Defendant's point is denied.

(5) *Warrantless seizure of evidence.*

■ Finally, defendant appeals the trial court's denial of its motion to suppress certain items obtained during a warrantless search of the Prewitt residence. The state contends that defendant's permission to Deputy Hughes to search the premises negated the necessity to obtain a search warrant. Defendant asserts she did not make a knowing choice on the issue of consent because Hughes did not advise her that she had a right to require a warrant, he did not have her sign a consent to search form, and he did not tell her the contemplated extent of his search. Defendant cites to us no case espousing this theory, nor have we found any. The Fourth Amendment permits a search without a warrant when consent is voluntary. The state must prove voluntariness by a preponderance of the evidence. *Johns*, 679 S.W.2d at 261–62. Our review is limited to determining whether substantial evidence supports the court's holding. *State v. Boggs*, 634 S.W.2d 447, 453 (Mo. banc 1982). The state presented sufficient evidence at the suppression hearing to support the search and the admission of the seized items. Deputy Hughes talked with defendant at 5 a.m. on Feb. 18 at the neighbor's home where she had gone with her children. He asked permission to search the residence, outbuildings and sur-

rounding property and to secure the premises. Defendant indicated that was fine with her. At trial defendant did not dispute Hughes' testimony and did not deny giving her consent to the search. This point is denied.

Judgment affirmed.

All concur.